IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SANDRA L. DONELSON

        Plaintiff,

v.                                                          Civil Action No. 2:14-cv-4

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

**REPORT AND RECOMMENDATION**

**I. INTRODUCTION**

**A. Background**

On January 17, 2014, Sandra L. Donelson ("Plaintiff") filed this claim under 42 U.S.C. §§ 405(g) for judicial review of the decision of the Commissioner of Social Security that denied her claim for disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act.[1] The Commissioner filed her answer on April 4, 2014.[2] Ms. Donelson then filed her Motion for Summary Judgement on May 8, 2014,[3] and the Commissioner filed her Motion for Summary Judgement on June 2, 2014.[4] Ms. Donelson filed a response to the Commissioner's Motion on June 16, 2014.[5] The motions are now ripe for this Court's review, and for this report and recommendation.

---

[1] Doc. 1.

[2] Doc. 8.

[3] Doc. 12.

[4] Doc. 13.

[5] Doc. 15.

**B. The Pleadings**

1. Ms. Donelson's Motion for Summary Judgment and Memorandum in Support.

2. Commissioner's Motion for Summary Judgment and Memorandum in Support.

**C. Recommendation**

I recommend that:

1. Ms. Donelson's Motion for Summary Judgment be **DENIED** because substantial evidence supports that the ALJ adequately considered Plaintiff's sit/stand limitation and did not improperly rely upon on the opinion of a single decisionmaker.

2. Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

## II. FACTS

**A. Procedural History**

On December 23, 2010, Plaintiff applied for Title II disability benefits. (R. 58-59). On January 12, 2011, Plaintiff filed for Title XVI supplemental security income. (R. 315-21). In both claims, Plaintiff alleges an onset of disability on December 8, 2009, due to fibromyalgia, arthritis, confusion, kidney failure, low bone density, lack of energy, drowsiness, muscle twisting, and herniated discs. (R. 58, 78, 315). Her claims for benefits and income were denied on April 12, 2011 and upon review on May 20, 2011. (R. 29, 32, 323, 327). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 20, 2012 in front of ALJ Brian B. Rippel. R. 330. On September 28, 2012, the ALJ found that Plaintiff has not been under a disability from December 8, 2009, through the date of the ALJ's decision. (R. 13-23). On October 31, 2012, plaintiff filed a request for review of the ALJ's decision. (R. 137). On November 21, the

Appeals Council denied Plaintiff's request for review. (R. 6). Plaintiff then timely brought her claim to this Court.

**B. Personal History**

Plaintiff was born on July 6, 1970, making her forty-two years old at the time of the ALJ hearing. (R. 334). Plaintiff graduated from high school and did not participate in any special education courses. (*Id*) . Plaintiff has one minor child. (R. 59, 335). Plaintiff has a driver's license and testifies that she "drive[s] little distances." (R. 335).

**C. Medical History**

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that Plaintiff was not under a disability from December 8, 2009, through the date of the ALJ's decision:

On December 19, 2009 and January 5, 2010, Plaintiff entered the Tri-State Community Health Center complaining of back pain. (R. 194, 198). X-rays were taken on January 12, 2010, at the Western Maryland Regional Medical Center in Cumberland, Maryland. (R. 190-91) Here, Plaintiff was diagnosed with "mild scoliosis" by Dr. Robert F. Miller. (*Id*). A MRI was performed on February 17, 2010. (R. 184). Dr. Charles P. Magal reported that the thoracic and cervical vertebra "are maintained in normal height and alignment." (R. 184-85). Additionally, Dr. Magal noted that disc spaces, thoracic spinal cord, paravertebral soft tissue, and the cervical spinal cord are all "normal." (*Id*). Dr. Magal only found "a small central disc protrusion with very mild compression on the anterior cervical spin at C5-C6." (*Id*).

Throughout 2010, Plaintiff visited Tri-State Community Health Center complaining of neck and back pain. (R. 168, 172, 182). Beginning in September 2010, plaintiff was prescribed various

medications. (R. 164). On December 6, 2010, Plaintiff again visited Tri-State Community Health Center. (R. 162). During this appointment, the attending physician noted that Plaintiff "has fibromyalgia" and pain in her shoulders and lower back. (*Id*).

On March 29, 2011, Dr. Stephen B. Nutter performed an "Internal Medicine Examination" on Plaintiff. (R. 207). Dr. Nutter found that Plaintiff "ambulates with a normal gait," "does not require a handheld assistive device," and "appears stable at station and comfortable in the supine position and comfortable in the sitting position." (R. 208). Dr. Nutter concluded that Plaintiff's neck provided "no evidence of thyromegaly, palpable masses or lymphadenopathy." (*Id*). The report found that Plaintiff's shoulders, arms, elbows, and wrists displayed "evidence of tenderness." (R. 209). Dr. Nutter found pain and tenderness while conducting range of motion testing on Plaintiff's cervical spine. (*Id*). Plaintiff's dorsolumbar spine revealed normal curvature. (R. 210). Ultimately, Dr. Nutter concluded that Plaintiff had chronic back and neck pain, including "diffuse myalgia and arthralgia." (R. 210).

On April 8, 2011, a "Physical Residual Functional Capacity Assessment" ("RFC") was conducted on Plaintiff. (R. 227). The RFC reports that Plaintiff has some exertional limitations. The RFC concluded Plaintiff: (1) can occasionally carry up to ten pounds; (2) can frequently carry less than ten pounds; (3) can stand or walk (with normal breaks) for a total of at least two hours in an eight-hour workday; (4) can sit (with normal breaks) for a total of six hours a day in an eight-hour workday with periodically alternate sitting and standing to relieve pain or discomfort; and (5) is limited in her lower extremities to push or pull. (R. 228).

The RFC also concluded that Plaintiff has some postural limitations. These findings concluded Plaintiff is only occasionally capable of climbing ramps and stairs, balancing, stooping,

4

kneeling, or crouching. (R 229). The RFC found that Plaintiff can never climb ladders, ropes, or scaffolds or crawl. (*Id*). The RFC also concluded that Plaintiff has no manipulative, visual, or communicative limitations. (R. 230-31). Additionally, the RFC found that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, and vibration. (R. 231). Finally, according to the RFC, Plaintiff should avoid even moderate exposure to hazards such as machinery and heights. (*Id*).

On June 7, 2012, a x-ray was conducted on Plaintiff's lumbar spine. (R. 258). Based on these x-rays, Dr. Miller found that Plaintiff's "vertebral bodies are normal in stature and alignment without fracture, subluxation, or other abnormality." (*Id*). A x-ray of the dorsal spine was also conducted. (R. 259). Dr. Miller found "no fracture, subluxation" and detected "very mild scoliosis." (*Id*). A third set of x-rays covered Plaintiff's cervical spine. (R. 260). Here, Dr. Miller found "a reversal of the normal curvature" suggesting the cause "could be due to muscle spasm." (*Id*). Additionally, Dr. Miller found "[c]hanges of cervical spondylosis" and "mild scoliosis and a reversal of the normal curvature which could indicate muscle spasm." (*Id*).

On July 27, 2012, Plaintiff underwent a MRI. (R. 257). From this MRI, Dr. H. Stanley Lambert concluded Plaintiff had a disc bulge at C5-C6 resulting in "mild right and moderate left neural foraminal stenosis." (*Id*). Plaintiff underwent another MRI on September 5, 2012. (R. 301). In reading this MRI, Dr. Michael Dwyer found "[m]inimal degenerative spondylosis. Otherwise, essentially unremarkable examination." and finding Plaintiff had "no HNP or central spinal canal stenosis." (R. 302).

**D. Testimonial Evidence**

Testimony was taken at the ALJ hearing held on September 20, 2012. The following portions

of the testimony are relevant to the disposition of the case:

Plaintiff testified that she was born on July 6, 1970. (R. 334). Plaintiff testified that she only drives short distances, primarily to take her daughter to school. (R. 335). Plaintiff contends that a family member will often drive Plaintiff and they will stop occasionally so Plaintiff can walk. (*Id*). During the hearing, Plaintiff testified that she was working part-time selling Fuller Brush Products. (*Id*). Plaintiff contends she makes minimal money through sales and she needs her brother to lift and carry the products for delivery. (*Id*). Plaintiff testified that, prior to the hearing, she had been selling these products for one year. (R. 336).

Prior to selling Fuller Brush Products, Plaintiff testified that she worked at Staples as a cashier in 2009. (*Id*). While working at Staples, Plaintiff testified that she could lift "probably [forty] pounds" of retail. (R. 337). Prior to Staples, Plaintiff testified she worked as a cashier at McDonalds. (*Id*). During some periods, Plaintiff worked at McDonalds on a full-time basis. (*Id*). Prior to McDonalds, Plaintiff testified she worked at Lowe's, first as a cashier, and was ultimately promoted to department manager. (R. 337-38).

Plaintiff testified that she could not return to working at Staples after being injured in a car accident. (R. 338). After this accident, Plaintiff contends she experienced back pain and was unable to perform domestic chores or cook. (*Id*). Plaintiff testified that she has pain through her arms, shoulders, neck, and legs. (R. 339). After the accident, Plaintiff contends she can only lift five pounds and has difficulty holding items, like car keys or pens. (*Id*) During a regular week, Plaintiff testified that she usually has "five to six bad days and maybe one to two good days." (R. 340). Plaintiff testified that, at times, she has difficulty bending down or sitting for long periods of time. (R. 341). Plaintiff testified that she uses a cane "[e]very once in a while." (R. 343). She also testified

that she has difficulty sleeping. (R. 344). Plaintiff testified that she has muscle spasms in her neck and back. (R. 346).

The ALJ also heard testimony from James Ganoe, a Vocational Expert ("VE"). The VE testified Plaintiff's past work as a cashier at Staples was light exertional work at a semi-skilled skill level. (R. 347). The VE classified Plaintiff's position at McDonalds as light exertional work at an unskilled skill level. (*Id*). The VE classified Plaintiff's cashier position at Lowe's as light exertional work at a semi-skilled level and Plaintiff's assistant department manager position as medium exertional level at a skilled skill level. (*Id*). The ALJ asked the VE to

> assume an individual of the claimant's age, education and work experience; limited to work at the sedentary exertion level; the sit/stand option, allowing the person to alternate between sitting or standing positions throughout the work day, while remaining on task; foot control operation bilaterally would be precluded; only occasional climbing ramps or stairs, balancing, stooping, kneeling and crouching; no ladders, ropes and scaffold climbing and no crawling; avoiding concentrated exposure to cold, heat and vibration, concentrated defined as higher levels than in a typical household; avoiding all hazardous workplaces, including unprotected heights and hazardous machinery. Would an individual with those limitations be able to perform any of the prior work as customarily or actually performed?

(R. 349). The VE testified that no such person would be able to perform the claimant's past work, however, there were jobs in the economy that could accommodate the limitations stated in the hypothetical. (*Id*). As examples, the VE named two positions: (1) addresser (DOT Code 209.587-010); and (2) bench worker (DOT Code 788.687-022). (*Id*). The VE testified that the Dictionary of Occupational Titles ("DOT") does not address a sit/stand option, however, the VE contended that, from his experience, "most employers will allow an individual to sit or stand" at these positions. (*Id*). The VE testified that these jobs would not exist if the limitations presented in the hypothetical

were expanded to limit occasional bilateral handling. (R. 350). The VE provided two additional jobs; (1) surveillance monitor (DOT 379.367-010) and (2) call-out operator (DOT 237.367-014) that would accommodate this additional limitation. (*Id*).

The VE also testified that most employers will give an individual a fifteen minute break in the morning and afternoon and a half-hour break for lunch. (*Id*). Additionally, the VE testified that most employers will allow an individual to be ten percent of task during a regular work day and would tolerate one to two days a month of absenteeism. (*Id*).

### III. ALJ FINDINGS

The ALJ concluded that Plaintiff "has not been under a disability within the meaning of the Social Security Act from December 8, 2009, through the date of [the ALJ's] decision." (R. 13). In reaching this determination, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 8, 2009, the alleged onset date of Plaintiff's disability. (R. 15). At step two, the ALJ found that Plaintiff has the following severe impairments: spine disorder (lumbargo and cervical spondylosis/scoliosis), fibromyalgia, hypertension, and obesity. (*Id*). At the third step, the ALJ found that none of Plaintiff's impairments or combination of impairments meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Supart P, Appendix 1. (R. 17). In order to consider step four of the process, the ALJ determined that Plaintiff now has the following RFC:

> to perform sedentary work . . . except she can lift five to seven pounds frequently and she requires a sit/stand option. The claimant cannot use bilateral foot controls, crawl, or climb ladders/ropes/scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. She should avoid concentrated exposure to extreme cold, extreme heat, and vibration; and should

>    avoid all exposure to hazards.

(R. 18). Also in step four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. 22). At the final step, the ALJ found that considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id*).

## IV. THE MOTIONS FOR SUMMARY JUDGMENT

### A. Contentions of the Parties

Plaintiff argues the ALJ's unfavorable decision should be remanded because the ALJ's finding at step five of the sequential process was not supported by substantial evidence and the ALJ erred by mistakenly considering the RFC assessment of a single decisionmaker ("SDM") as a medical opinion. The Defendant argues that the ALJ did not err with respect to the sit/stand option or improperly rely upon a SDM.

### B. The Standards

1. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set

forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

**C. Discussion**

1. The ALJ's Sit/Stand Determination

Plaintiff contends the ALJ's sit/stand determination was not supported by substantial evidence. Plaintiff argues the ALJ's sequential step analysis is incomplete because the ALJ failed to define the boundaries of the plaintiff's sit/stand option requirement, resulting in an incomplete hypothetical being considered by the vocational expert. Defendant contends the ALJ did not err with respect to the sit/stand option requirement. Defendant argues the VE explained that the sit/stand

option would not significantly erode the occupational base and that limitation addressed in the ALJ's decision was sufficiently specific.

Social Security Ruling ("SSR") 83-12 provides the following guidance to an ALJ when making a disability determination for a claimant requiring a sit/stand option:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferrng work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983). Additionally, SSR 96-9 provides guidance to an ALJ for evaluating a claimant's ability to do less than a full range of sedentary work, including the need for alternate sitting and standing. SSR 96-9 explains, in part:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the

> facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9P, 1996 WL 374185, *7 (July 2, 1996).

Additionally, "the reasonable implication of an ALJ's silence [in their written decision] regarding the frequency of a claimant's need to alternate between sitting and standing is that the sit/stand option is 'at-will,' 'as needed,' or otherwise at a claimant's own volition." *Bentley v. Comm'r of Soc. Sec.*, 1:13CV163, 2014 WL 906587, *18 (N.D.W. Va. Mar. 7, 2014) (quoting *Ruff v. Colvin*, 1:12-CV-165-RJC, 2013 WL 4487502 (W.D.N.C. Aug. 20, 2013); *see also Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005) (finding that "[a]lthough the ALJ failed to specify the frequency that [plaintiff] needed to change his sit/stand position, the reasonable implication of the ALJ's description was that the sit/stand option would be at [plaintiff's] own volition.").

In this case, as suggested in SSR 83-12 and 96-9, a VE testified during the hearing about whether jobs could accommodate Plaintiff's physical limitations and whether these jobs would allow a sit/stand option. *See* SSR 83-12, 96-9. During the hearing, the VE testified that a number of occupations would satisfy these conditions. (R. 349). The VE testified that this assessment was "based upon [the VE's] experience in placing individuals and [the VE's} observations of work as it's performed in the region." (*Id*). Further, during the hearing, the ALJ proposed an additional hypothetical to the VE addressing the opportunity for a person to stand and walk for two hours and sit up to six hours in a eight hour work day. (*Id*). Again, the VE testified the proposed occupations would satisfy these conditions. (*Id*). From the record, the ALJ's finding that Plaintiff requires a "sit/stand option" is specific enough to satisfy SSR 83-12 and 96-9. Therefore, the ALJ's findings

are supported by substantial evidence.

2. The ALJ's Use of a Single Decisionmaker

Plaintiff also contends that the ALJ erred because he (1) failed to identify each medical opinion available in the record; (2) incorrectly assessed Dr. Nutter's physical evaluation; and (3) incorrectly considered the assessment of a SDM as a medical opinion, citing *Coggins v. Astrue*, 1:09CV405, 2011 WL 815269 (W.D.N.C. Jan. 28, 2011).

Defendant argues that the ALJ did not improperly rely upon a SDM and the conclusions of multiple doctors confirm the ALJ's conclusions. Further, the Defendant argues that *Coggins* is distinguishable from the facts of this case.

*a. Identifying each medical record*

In his decision, the ALJ gives the greatest weight to "the opinions of the experts who prepared the State Agency (DDS) reports," citing Exhibits 7F-11F of the record. Plaintiff argues that the ALJ "failed to consider, or event [sic] to identify" these medical opinions. The undersigned disagrees. The record is clear to which reports the ALJ cited in his decision. Further, if Plaintiff's counsel is able to cite the individual reports in their motion based solely from the ALJ's written decision, it is apparent that the reports have been sufficiently cited and addressed by the ALJ.

*b. Inconsistencies between the DDS and Dr. Nutter's report*

Plaintiff also argues that Dr. Nutter's examination, performed on March 29, 2011, contradicts the ALJ's findings that "no opinions of record from treating or examining reports . . . are inconsistent with the findings in the DDS reports . . . ." (R. 21). Specifically, Plaintiff argues Dr. Nutter's findings that Plaintiff had upper body pain, including a reduced range of motion in Plaintiff's left shoulder, conflicts with the RFC finding no established manipulative limitations. (R.

13

230). In a RFC report, there are four categories recognizing manipulative limitations. (*Id*). A claimant can be limited in: (1) reaching in all directions; (2) handling; (3) fingering; or (4) feeling. (*Id*). Although Dr. Nutter reported that Plaintiff experienced some pain when moving her right shoulder, the movement was limited by only ten degrees compared to her right shoulder. (*Id*). Further, Dr. Nutter reported that Plaintiff "is able to make a fist bilaterally" and "is able to write and pickup coins with either hand without difficulty." (R. 209). Thus, substantial evidence supports that the ALJ's findings are consistent with the findings by Dr. Nutter and the RFC.

*c. Assessment of a SDM as a medical opinion*

Finally, Plaintiff argues the ALJ erred when he considered the assessment of a SDM as a medical opinion. Plaintiff alleges the facts of *Coggins v. Astrue*, 1:09CV405, 2011 WL 815269 (W.D.N.C. Jan. 28, 2011) are analogous to this case. In *Coggins*, the ALJ mistakenly characterized the RFC by a single decisionmaker "as an assessment by a medical source." 2011 WL 815269, *1. Citing the Eight Circuit case *Dewey v. Astrue*, 509 F.3d 447, 449–450 (8th Cir.2007), *Coggins* holds that remand is necessary when the ALJ gives "extraordinary weight to an opinion of a single decisionmaker" while "disregard[ing] the opinion of an *actual licensed physician*." *Id. at \*2* (emphasis included).

In this case, the Plaintiff's RFC, created on April 8, 2011, was signed by a SDM. (R. 234). However, from the record, it does not appear that the ALJ mistakenly believed the SDM was a "medical source." *Id.* at *1. Plaintiff contends that because the ALJ mentions that the DDS experts (including the SDM) "did not have an opportunity to examine or treat the claimant" this suggests the ALJ believed the SDM was a physician. (R. 21). The undersigned is unconvinced. Only two lines after this quote, the ALJ explains he offered these experts great weight because of their

"familiarity with the SSA disability evaluation program . . . ." (*Id*). Finally, the ALJ did not incorrectly weigh the SDM's RFC because on May 20, 2011, the RFC was affirmed "as written" by Dr. Rogelio Lim. (R. 226). Thus, there is substantial evidence to support the ALJ's disability conclusions.

## V. RECOMMENDATION

In reviewing the record, the Court concludes that the ALJ's decision was based on substantial evidence, and **RECOMMENDS THAT**:

1. Ms. Donelson's Motion for Summary Judgment be **DENIED**.
2. Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: September 23, 2014                /s/ *James E. Seibert*
                                                                                          JAMES E. SEIBERT
                                                                                          UNITED STATES MAGISTRATE JUDGE